# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ADONIS R. GRADY,<br><br>                    Plaintiff,<br>v.<br><br>STATE OF WISCONSIN,<br>WISCONSIN DEPARTMENT OF<br>CORRECTIONS and ALEX A.<br>WOUTS,<br><br>                    Defendants. | Case No. 21-CV-923-JPS<br><br>**ORDER** |

      Plaintiff Adonis R. Grady ("Grady"), an inmate confined at the Kettle Moraine Correctional Institute, filed a complaint under 42 U.S.C. § 1983 seeking to hold the State of Wisconsin, the Wisconsin Department of Corrections (the "DOC"), and Alex A. Wouts ("Wouts") (collectively, "Defendants") liable for violations of his constitutional rights. (Docket #1). Specifically, Grady alleges that Wouts, a prison guard, sexually assaulted him several times while he, Grady, was an inmate at Fox Lake Correctional Institute ("FLCI"). He further alleges that the State of Wisconsin and the DOC should indemnify Wouts for any damages arising from acts within the scope of his employment. (*Id.* at 7–11).

      Grady has paid the $402 filing fee in full, and he is represented by counsel. However, the Prison Litigation Reform Act (the "PLRA") provides that "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). This screening requirement applies broadly to "prisoners," regardless of whether they are represented

by counsel. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) (noting the screening provision's lack of differentiation between represented and unrepresented prisoners).

The policy rationale for this is hazy. While the PLRA was designed to curb frivolous litigation brought by prisoners proceeding pro se, this concern is less apparent in a represented case, where attorneys are duty-bound to avoid frivolous litigation. *See* Federal Rule of Civil Procedure 11(b). Indeed, the provision is unevenly applied throughout the nation. *See, e.g., Corteau v. United States*, 287 F. App'x. 159, 161 (3d Cir. 2008) ("Significantly, because [the plaintiff] was now represented by counsel, the Second Complaint was served on the United States without first being screened by the District Court under § 1915A."); *Lopez v. Homan*, No. 19-cv-98, 2020 WL 3949260, at *1 (D. Nev. 2020) (granting the defendants' motion to screen the complaint but noting that "the court does not view screening counseled cases to be an efficient use of judicial resources"); *Simmons v. CDCR*, 49 F. Supp. 3d 700, 701 (E.D. Cal. 2014) ("Screening of represented cases to decipher the allegations and claims is usually unnecessary."). Nevertheless, the statute is not ambiguous, and good policy is a matter left to Congress. The Court will screen the complaint.

1. **LEGAL STANDARD**

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim

for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

2.  **RELEVANT ALLEGATIONS**

When Grady was an inmate at FLCI, he often found himself under the supervision of Wouts. As a prison guard, Wouts was responsible for "maintaining order in correctional facilities," "maintaining respect for authority among inmates," and "enhancing their ability to live with others within the rules." (Docket #1 ¶¶ 74–76). Wouts oversaw a cell block and developed a reputation for being able to "break" difficult or unruly inmates. (*Id.* ¶ 77).

In 2013, Wouts began making comments about homosexual acts to Grady and other male prisoners. In 2014, Grady received a letter from Wouts describing various sex acts in which he wished to engage with Grady. In the fall 2015, Grady was placed in segregation for violating one of FLCI's policies. Wouts ensured that Grady served his segregation on a block that Wouts supervised.

During this period, the sexual harassment intensified to assault. On one occasion, Wouts ordered Grady to go to a dark storage area, ostensibly to break down boxes. While Grady was in the storage area, Wouts cornered him, grabbed his genitals, and forced him to perform oral sex on Wouts. This happened at least twice.

After Grady was released from segregation, Wouts lobbied for Grady's placement on the cell block that Wouts supervised. Wouts continued to sexually assault Grady. For example, in the laundry room,

Wouts grabbed Grady's genitals and attempted to stimulate him. Additionally, Wouts forced Grady to masturbate in the shower while Wouts watched.

The complaint alleges that Wouts designed to sexually assault Grady, as well as others, to control them. Wouts convinced his supervisors to place certain prisoners in the cell block that he supervised, where he was more easily able to sexually assault them. Thus, Wouts's reputation as a prison guard who was able to "break" difficult prisoners was connected to his sexual assaults. After sexually assaulting prisoners like Grady (i.e., "breaking" them), he would give them preferential treatment and would speak favorably of them to his supervisors. (*Id.* ¶¶ 42–46).

Grady was not the only victim of Wouts's assaults. Other prisoners complained, including one named Nathan Veith. The complaint does not state when the complaint occurred, only that a "sham investigation revealed nothing." (*Id.* ¶ 87). FLCI's administrators "accused Veith of lying," "protected Wouts," and reassigned Veith to a high security prison in retaliation for his complaint. (*Id.* ¶¶ 89–90). According to the complaint, FLCI had no interest in punishing Wouts, who "had a reputation of volunteering to take problematic inmates on his block and keeping those inmates in line." (*Id.* ¶ 91).

Eventually, the Dodge County District Attorney's office caught wind of the issue and investigated Wouts. The investigation resulted in six criminal charges, and a jury found Wouts guilty of all six counts of sexually assaulting inmates. At a post-conviction hearing, when Wouts's trial counsel's representation was placed at issue, trial counsel testified that Wouts had "admitted all of the alleged conduct to [him]." (*Id.* ¶ 3). Around this time, it became known to the public that Wouts was HIV positive.

Page 4 of 9
Case 2:21-cv-00923-JPS   Filed 01/06/22   Page 4 of 9   Document 5

3. **ANALYSIS**

   3.1    **Count One – Section 1983 Claim Against Wouts**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Grady alleges that Wouts, acting under the color of law as a prison guard for the DOC, violated Grady's rights to be free from cruel and unusual punishment under the Eighth Amendment when Wouts made repeated, unwanted sexual advances and forced Grady to perform oral sex.

A claim for cruel and unusual punishment arises where a defendant is evinces "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[P]hysical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (citations omitted). Grady alleges that Wouts acted with deliberate indifference for Grady's physical and mental health by repeatedly subjecting him to unwanted and humiliating sexual activity and by exposing him to sexually-transmitted infections. This is sufficient to state a claim for a violation of the Eighth Amendment. *See id.* (holding allegations that "prison guards conducted the strip search in a manner designed to demean and humiliate" the plaintiff were sufficient under the Eighth Amendment).

### 3.2 Count Two – Indemnification Claim against the State of the Wisconsin and the DOC

The tougher battle for Grady is Count Two, which seeks to hold the State of Wisconsin and the DOC liable under Wisconsin statute § 895.46. This provision indemnifies public employees for liabilities incurred while "acting within the scope of employment[.]" *Id.* The question, then, is whether Grady has sufficiently alleged that Wouts acted within the "scope of employment" as a prison guard when he assaulted Grady.

"Generally, scope of employment is a fact issue." *Martin v. Milwaukee Cnty.*, 904 F.3d 544, 554 (7th Cir. 2018). An act is within the "scope of employment" if it is a "natural" or ordinary "part or incident of the services contemplated." *Id.* at 555 (paraphrasing Wisconsin state law). The act must be "so closely connected with the employment objectives, and so fairly and reasonably incidental to them, that it may be regarded as a method, **even if improper**, of carrying out the employment objectives." *Id.* (emphasis added). Courts "must consider the employee's intent and purpose." *Id.* However, "[a]n act is not in the scope [of employment] if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer." *Id.*

In *Martin*, the Seventh Circuit held, based on the facts of the case, that a prison guard's rape of a pregnant inmate did not occur in the "scope of employment" for indemnification under § 895.46 because the plaintiff "failed to offer any evidence [that] the sexual assaults were natural, connected, ordinary parts or incidents of" or otherwise similar to the defendant's job of guarding inmates. *Id.* at 556. The court explained that Milwaukee County expressly forbade sexual acts between guards and prisoners, and it clearly did not contemplate sex with inmates as part of

achieving its objectives in safeguarding prisoners. *Id.* at 548, 555–56. Moreover, "[t]he uncontested evidence showed [the defendant] did not subjectively intend in any way to benefit his employer." *Id.* at 556.

Given Wisconsin state law, the Seventh Circuit fell short of holding that sexual assault could *never* be within the scope of employment for indemnification. *Id.* at 557. This Court is not aware of any Wisconsin case with such a holding. However, it is a tough hill to climb. *See Doe v. Foley*, 949 N.W.2d 884 (Table), 2020 WL 4781582, at *4 (Wis. Ct. App. 2020) ("Wisconsin case law has held that sexual conduct falls outside of one's scope of employment.").

With this case, Grady attempts to climb that hill. He alleges that a natural and ordinary part of Wouts's job as a prison guard consisted of maintaining order and inducing prisoners to obey prison policy. (Docket #1 ¶¶ 74–76). He further alleges that Wouts's sexual assaults, though improper, were connected to the prison's objectives in extracting good behavior from the prisoners. (*Id.* ¶¶ 77–86). Finally, Grady alleges that Wouts's sexual assaults were, at least in part, made with the intent to subdue difficult prisoners, in service of FLCI's objectives to maintain order and control over difficult prisoners. (*Id.* ¶¶72–73); *Olson v. Connerly*, 457 N.W.2d 479, 479 (Wis. 1990) ("[C]onsideration must be given to whether the employee was actuated, at least in part, by a purpose to serve his or her employer.").

Whether Grady will be able to prove this up at summary judgment is another story. Indeed, if the state furnishes evidence demonstrating that Wouts's behavior was "different in kind from that authorized" or "too little actuated by a purpose to serve the employer," then he will lose this claim. *Martin*, 904 F.3d at 555. But on the face of the complaint, the Court cannot

say that Wouts's behavior was expressly prohibited or lacked sufficient intent to benefit the prison. Indeed, Grady has alleged that FLCI's administrators knew of Wouts's behavior and did nothing to curb it because he was so good at subduing difficult prisoners. If this is true, then a jury may well find that Wouts acted within the scope of his employment for § 895.46 indemnification.

3.  **CONCLUSION**

For the reasons explained above, the Court will permit Grady to proceed on each of his two claims. The parties should refrain from filing a motion to dismiss challenging the issues addressed in the foregoing analysis. The Court employed the same standard it would use when deciding a motion under Rule 12(b). *Cesal*, 851 F.3d at 720. Of course, if Defendants believe an issue not contemplated by this screening order is dispositive (e.g., lack of standing or a jurisdictional defect) they are certainly free to raise it.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. If they do not file such a motion within forty-five days, that affirmative defense will be waived. The Court will issue a trial scheduling order at a later date that embodies all other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff may proceed on his complaint pursuant to 28 U.S.C. § 1915A;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted

to the Wisconsin Department of Justice for service on the State of Wisconsin and the Wisconsin Department of Corrections;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service or this affirmative defense is waived;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the complaint.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge