ADONIS R. GRADY,

    *Plaintiff,*

    *v.*

STATE OF WISCONSIN, *ET AL.,*

                                      Case No. 2:21-cv-923

    *Defendants.*

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO INDEMNIFICATION

The Plaintiff, Adonis Grady, by counsel, submits this brief opposing the motion of the State of Wisconsin and Wisconsin Department of Corrections (collectively, "the DOC") for summary judgment as to indemnification. *See* ECF No. 38. Filed alongside this brief are Plaintiff's Proposed Additional Facts for Summary Judgment.

## I.  INTRODUCTION

Alex Wouts was a sergeant for the DOC at Fox Lake Correctional Institution. He used his position to sexually assault several inmates, while on duty and while in the prison.

This was his method. Wouts used the power and control generated by his sexual assaults to coerce Grady into performing tasks that were helpful to the DOC and that he would not have done otherwise, such as cleaning and doing laundry. Wouts would give special attention to vulnerable inmates. He would ask them to perform special tasks for

him. Performing the tasks would isolate the inmate. He would reward the inmate by praising them to other staff members, which would help the inmate receive desirable treatment from the institution. This could take the form of recommending the inmate for programming that could shorten an inmate's sentence. It could also take the form of recommending the inmate for transfer to a lower security prison. Wouts would then begin touching the inmate while they were isolated and performing his tasks. The touching would escalate. But the inmate would have a dilemma. Would they be believed if they said anything? Would they be punished? Would they lose out on valuable programming or a desirable transfer?

Wouts's plan worked until it didn't. He would be convicted. He himself is now a prisoner. But it worked for a while. Wouts was even reported once by an inmate for his assaults, but the inmate was punished and sent to a maximum-security institution. Undeterred, Wouts kept sexually assaulting inmates.

Why did his plan work for as long as it did? Everyone got something. Wouts satisfied his desire for either sexual gratification or sexually humiliating vulnerable people, whatever his partial motive on that front was. Wouts also managed to assemble a coterie of inmate-victims, who performed extra tasks and who were especially helpful, compliant, and obedient—making Wouts a successful correctional staff employee. The victims received preferential treatment. Staff were told by a sergeant who was known to be especially punitive, that the inmate-victims were well-behaved, helpful, and friendly. And the DOC received the (unpaid) performance of tasks and inmates who did not get

2

in trouble and who were on the straight and narrow road to rehabilitation. This is a benefit so endearing to the DOC that it promotes staff who deliver it.

Nevertheless, the DOC argues that Wouts was not acting within the scope of his employment. Grady and Wouts have agreed on the law that should be applied. ECF No. 26 at 3–4. The instruction, derived from the Wisconsin Jury Instructions[1], is not simple. It is highly fact dependent.

So, the crux. Has the DOC carried its burden to establish that no reasonable juror could conclude that Wouts was acting within the scope of his employment when he sexually assaulted Grady? It has not. Two crucial facts are in dispute.

First, chiefly, Wouts's state of mind during the assault is in dispute. Wouts has not been deposed. We can, however, infer what he was thinking. He may have had personal reasons for sexually assaulting inmates, sure. But he was also delivering benefits to the prison. Inmates under his supervision would become especially helpful and courteous. Bathrooms were cleaned, dayrooms were cleaned, laundry was done, and other tasks completed by inmates, who demanded no compensation. Thus, a juror could conclude that, while in the time and space limits of his authority, Wouts was "actuated by a purpose to service his employer." *Id.*

Second, whether Wouts's assaults were similar to his duties is in dispute. A jury will have to determine whether Wouts's conduct was "different in kind from that authorized" by the DOC. *Id.* And a jury could find that it was not different in kind because his conduct was closely connected to Wouts's "employment objectives, and so fairly and

---

[1] WIS JI-CIVIL 4035, *Servant: Scope of Employment* (2020). Available here: https://wilawlibrary.gov/jury/files/civil/4035.pdf

reasonably incidental to them, that it may be regarded as a method, even if improper, of carrying out the employment objectives." *Id.* Here, Wouts was assigned to maintain order and rehabilitate inmates. Inmates under his control helped keep the prison running smoothly, all while being courteous and respectful.

## II.  BACKGROUND

The DOC has attempted to have this Court remove them from this lawsuit two times prior to their current attempt. Originally the DOC asked this Court to dismiss them from this action entirely. ECF No. 13. The DOC withdrew that motion when it was pointed out to them that dismissal would end their ability to litigate whether Defendant Alex Wouts was acting within the scope of his employment. *See* ECF No. 14; ECF No. 17.

Then the DOC moved for judgment on the pleadings, arguing that Wouts has failed to "cooperate in the defense" of this litigation. ECF No. 26 at 1. This Court denied that motion, finding that the DOC "failed to carry the burden of persuasion that they are entitled to judgment as a matter of law on the pleadings." ECF No. 35 at 5. In the end, this Court concluded that there are "too many unanswered questions to determine whether Defendant Wouts has refused to cooperate in the litigation." *Id.* at 6.

The only significant change in the record from the time this Court denied the DOC's motion for judgment on the pleadings, is a letter Wouts sent this Court after the DOC moved for summary judgment. In that letter, Wouts informed the Court that he has "every intention to cooperate" in this litigation but has been unable to do so because due to the COVID pandemic and his incarceration it has been "difficult to access any lawyers that practice Wisconsin Law." ECF No. 41. And the DOC, who normally provide their

4

employees with legal assistance for lawsuits brought against them for damages caused during their work, has left Wouts to twist in the wind. ECF No. 38 at 13.

The DOC now makes their third attempt by way of a motion moved for summary judgment, contending that the record before this Court leaves no factual dispute as two questions: whether Wouts was acting within the scope of his employment, and whether Wouts has refused to cooperate in this litigation. *Id.* But the record still contains simply "too many unanswered questions to determine" whether the DOC can escape their normal obligation to front the bill for damages their employees cause under Wis. Stat. § 895.46. ECF No. 35 at 6. And so judgment in the DOC's favor on those questions is as inappropriate now as it was when they moved for judgment on the pleadings.

## III. STANDARD

The summary judgment standard is familiar. It is well established that summary judgment is only warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding whether there are any genuine issues of material fact, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Id.* at 255.

## IV. ANALYSIS

This case should go to a jury. The DOC has not carried its burden. To determine whether a reasonable jury could find that Wouts acted within the scope of his employment, this Court is required to follow Wisconsin law, and attempt to divine what the Wisconsin Supreme Court would do. *Martin v. Milwaukee County*, 904 F.3d 544, 551–52 (7th Cir. 2018). Applying Wisconsin law, there are two material facts in dispute here. Additionally, the Court should reject the DOC's argument that it need not indemnify Wouts because he refused to cooperate with them.

### A. Wouts's subjective state of mind and the kind of work he was employed to perform are in dispute.

First, Wouts's subjective motivations are in dispute. And a jury could find that Wouts was motivated, "at least in part," to benefit the DOC. *Olson v. Connerly*, 156 Wis. 2d 488, 500, 457 N.W. 2d 479 (Wis. 1990). We can make this inference based on Wouts's actions. He obtained a benefit for the prison in the form of creating helpful, compliant, and well-behaved inmates. He also obtained a benefit for the prison in the form of having inmates clean and assist with tasks without them being paid for it.

Second, whether Wouts's actions were sufficiently of the kind he was employed to perform is in dispute. "The question whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury." Restatement, 1 Agency 2d, page 505, §228, comment d. Here, many of the factors support a finding that Wouts's assaults were not so different. These factors, specifically, allow for that finding: (1) the time, place, and purpose of the act; (2) the previous relations between the DOC

and Wouts; (3) the extent to which the DOC entrusted responsibility to Wouts; (4) that the DOC had reason to expect Wouts would assault Grady; (5) and that the means to assault Grady were entrusted to Wouts. *Id.* at 506, § 229 (Kind of Conduct within Scope of Employment).

Finally, the Court should reject the argument that Wouts refused to cooperate with the DOC. If anything, the DOC refused to cooperate with him. The DOC sent Wouts requests for admissions tailored to undermine him, instead of attempting to help him with the underlying litigation. In response, Wouts wrote the Court expressing his desire to cooperate.

**B. The Court should disregard the DOC's facts supported by requests it sent to Wouts.**

As a threshold matter, much of the evidence the DOC uses in support of its motion is not binding on Grady. Wouts is serving a prison sentence for his horrific crimes, but as his letter to this Court shows, he's willing to talk about what he did to Grady. ECF No. 41. But the DOC made no efforts to depose him. And they certainly didn't depose, or even offer a declaration, from any individual who spoke to Wouts about *why* he decided to sexually assault Grady. These individuals exist: after all, Wouts was prosecuted and convicted at a jury trial. But the DOC appears to have chosen not to speak to them as part of this lawsuit.

Instead, the DOC sent Wouts a set of requests for admission designed to establish that he was not acting within the scope of his employment. ECF No. 38 at n. 2. One request was for Wouts to admit that he did not believe his assaults of Grady benefitted the DOC. *Id.* Wouts failed to respond to the requests for admission timely. *Id.*

The DOC now argues that Wouts's failure to respond has created an indisputable fact that his sexual assaults were not motivated by a desire to aid them. *Id.* But the DOC misunderstands how Rule 36 operates. Fed. R. Civ. Pro. 36.

"Deemed admissions" under Rule 36 are only binding on the individuals who failed to respond to them, not to other parties in a lawsuit. *Riberglass, Inc v. Techni-Glass Industries, Inc.*, 811 F.2d 565, 566 (11th Cir. 1987). Grady is the one bringing the indemnification claim at issue here, not Wouts. And so Wouts's non-response to the admissions, contrary to the DOC's arguments, are not something "the court [can] consider" when deciding if "summary judgment" is appropriate for the indemnification claim brought by Grady. *Allen v. Destiny's Child*, No. 06 C 6606, 2009 WL 2178676, at *2 (N.D. Ill. July 21, 2009). Courts that have considered this issue have concluded that admissions are not binding on parties they were not directed to. *Id.* (collecting cases); *see id.* (concluding that responses to requests for admissions by one co-defendant could not be considered in summary judgment motion against another co-defendant).

The logic of this is obvious. Parties to a federal lawsuit cannot achieve a record of undisputed facts simply by sending Rule 36 requests for admission to friendly witnesses and then using those admissions against parties who had no opportunity to respond to the requests. Imagine if Grady had sent Wouts a request, and Wouts admitted he was acting within the scope of his employment. Would the DOC be bound forever in any lawsuit by Wouts's admission? Of course not. *Ruckelshaus v. Cowan*, 2018 WL 2150953 at * 1 (S.D. Ind., May 10, 2018) (noting "that answers to requests for admission are only binding on the party who makes the answers.")

And if the DOC were correct that the parties are bound by Wouts non-responses, then it would be in quite the bind. Because the requests for admission were not the only things that Wouts failed to respond to. Wouts was served with, and failed to answer, the initial complaint in this case. And upon the entry of default, Wouts "lost all standing to challenge the truth of the well-pleaded facts" contained in the complaint. *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994). And among the facts contained in the complaint are that "Wouts, in assaulting Grady, was actuated, in part, by a purpose to serve the Fox Lake Correctional Institution" and that "Wouts's assaults of Grady were done within the scope of Wouts's employment with the State of Wisconsin." ECF No. 1, ¶¶70, 72.

If the parties were bound by Wouts non-responses, then his default would be fatal to the DOC's motion for summary judgment. But of course, Wouts's default binds only him. Just as the DOC's requests for admissions bind only Wouts, not Grady. Wouts's non-answers in this case are simply irrelevant to the question of whether summary judgment is appropriate for Grady's indemnification claim against the DOC. And because that is the only evidence the DOC has provided as to Wouts's intent and purpose in sexually assaulting Grady, the motion for summary judgment should be denied.

### C. Wouts was motivated, in part, to benefit the DOC.

The "sine qua non" of scope of employment under Wisconsin law is, whether the employee's actions were "at least partially actuated by a purpose to serve the employer." *Martin*, 904 F.3d at 556 (citing *Olson*, 156 Wis. 2d 488). This makes the issue here a factual one, one that is normally reserved for a jury because it is exceedingly rare that a court can determine a person's intent and purpose at the summary judgment stage. *Block v. Gomez,*

201 Wis. 2d 795, 549 N.W. 2d 783, 787 (Wis. Ct. App. 1996), *Stephenson v. Universal Metrics, Inc.*, 247 Wis. 2d 349, 633 N.W. 2d 707, 713 (Wis. Ct. App. 2001).

Rare does not mean impossible, but to be entitled to summary judgment the DOC needed to present a record where "the facts are undisputed, and all reasonable inferences therefrom lead to but one conclusion." *Martin,* 904 F. 3d at 554 (citing *Graham v. Sauk Prairie Police Commission*, 915 F. 2d 1085, 1088 (7th Cir. 1990)). For the purposes of the current motion, that means the DOC is required to present this Court with undisputed evidence that allows this Court to conclude that Wouts's "intent and purpose" in sexually assaulting Grady was not aimed, even in part, at serving his employer. *Id.* The DOC needs to present a record that leaves no room for any reasonable juror to infer that Wouts's sexual assaults were motivated, even in part, by a desire to enforce his job duties "overzealously….by improper means." *Wilson v. City of Chicago,* 120 F. 3d 681, 685 (7th Cir. 1997).

Here, the only insight the record holds as to Wouts's motivation comes from Grady. According to Grady, Wouts used the power and control generated by his sexual assaults to coerce Grady into performing tasks he would not have done otherwise that were helpful to the DOC, such as cleaning bathrooms and doing the laundry. Grady also says that the power Wouts wielded over him motivated him to be a model prisoner by following rules and avoiding trouble. Wouts never told Grady that he felt his job would be in jeopardy if his sexual assaults were discovered. It was Grady who was afraid of being punished if it came to light. Grady was aware that when another inmate tried to speak up about Wouts's crimes, the DOC punished that inmate.

As a DOC employee Wouts's job was to ensure compliance by prisoners with DOC rules. His ability to meet this goal was included in his job evaluation, and the DOC clearly thought Wouts was good at his job. He was promoted to supervisor. Wouts, once he was able to gain compliance from victim-inmates, would report this information in official DOC communications used to decide programming and classification for those same inmates.

Based on this, a reasonable juror could conclude that Wouts believed his sexual assaults promoted his "duties as a [corrections] officer" even if they were "quite improper methods of carrying out those duties." *Martin,* 904 F. 3d at 554 (quoting *Bell v. City of Milwaukee,* 746 F. 2d 1205, 1271 (7th Cir. 1984) (abrogated on other grounds)). A juror could rightly believe that Wouts was motivated by the "dual purpose" of his sexual gratification and to garner the reputation for achieving "employers' objectives" that had led to his elevation within the DOC. *Id.* (citing *Hibma v. Odegaard,* 769 F. 2d 1147, 1153 (7th Cir. 1985)).

This is what separates the situation here from that presented in *Martin,* the primary case the DOC relies upon in their request for summary judgment. In that case, the Seventh Circuit concluded that, under the facts of that case, no reasonable juror could conclude that a prison guard who raped an inmate was acting within the scope of their employment. In doing so, the Court emphasized that the record there had no evidence that would allow "a reasonable jury [to] regard the sexual assaults as improper methods of carrying out employment objectives." *Id.* at 555. This was because the guard in that case "told [the inmate] he would be fired if people learned" of the sexual assaults and the

only evidence at trial was that "any power, dominion, and control" the guard achieved over the inmate by "sexual assaulting her" benefited only the guard, not his employer. *Id.* at 556.

However, the Court made it clear that they were not drawing a bright line rule: "We do not hold sexual assault could never be within the scope. We simply conclude that *on these facts*, even when viewed most favorably to Martin . . . no reasonable jury could find these sexual assaults were within the scope." *Id.* at 557 (emphasis added). The record here, or lack thereof, takes this case outside *Martin*. There is no evidence Wouts feared he would be fired if his sexual assaults were discovered. And the "power, dominion, and control" benefitted both the DOC and Wouts. *Id*. Grady performed tasks for the DOC, such as cleaning, that he would not have performed if not for Wouts's sexual assaults. *Id.* at 556. And Grady was motivated to follow rules and comply with all DOC staff, due to the fear instilled in him by Wouts's predatory acts. This also benefited the DOC.

Unlike the Plaintiff in *Martin,* Grady has "introduce[d]…evidence from which a reasonable jury could conclude the sexual assaults were actuated even to a slight degree by a purpose to serve" the DOC. *Id.* And the record here supports a conclusion that, because Wouts was employed (and promoted) due to his ability to convince inmates to behave and follow DOC rules, the sexual assaults were seen in part by Wouts as a method "of carrying out those duties." *Id.* Summary judgment should be denied.

**D. Wouts's conduct was similar to what he was authorized to do.**

Wouts was tasked with maintaining order within the prison. He also provided input to the DOC about inmates when they were being considered for programming or

12

placement. He could be promoted for showing an ability to gain compliance from inmates. Inmates, who were also his victims, were forced to be especially helpful and courteous. Out of fear of Wouts and a desire to shorten their sentences or be transferred to less secure institutions, Wouts's victims cleaned, performed tasks, followed rules, and were generally helpful. When one of Wouts's victims tried to come forward, the prison shut it down. It disciplined him and shipped him off to a more secure facility.

Much ink has been spilled by courts and lawyers discussing the "significant" role that an employee's subjective state of mind plays in the scope of employment questions. *See e.g.*, *Olson*, 156 Wis. 2d at 496–501 (collecting cases). But less has been written about another factor relevant to the scope of employment analysis, the similarity of the kind of conduct the employee was employed to perform.

This Court must follow the Wisconsin Supreme Court. The Wisconsin Supreme Court looks to the Restatement (Second) of Agency for guidance on its indemnification statute. *See Olson*, 156 Wis. 2d at 498 (citing the restatement), *Finsland v. Phillips Petroleum Co.*, 57 Wis. 2d 267, 276, 204 N.W.2d 1 (Wis. 1973) (quoting the restatement), *& Martin*, 904 F.3d at 553 (quoting *Finsland's* quote of the restatement).

The factor identified by the Wisconsin Supreme Court and the Seventh Circuit that's lifted from the restatement looks simple enough: "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, . . ." *Olson*, 156 Wis. 2d at 498 (quoting *Finsland's* quote of the restatement); *accord Martin*, 904 F.3d at 553 (same).

But the analysis is not simple. The following section of the restatement is devoted entirely to this factor. The courts above were quoting Section 228. That section offers the following guidance:

> The question whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury.

Restatement, 1 Agency 2d, page 505, §228, comment d. And then in the next section, the restatement advises that this factor requires, in turn, requires consideration of 10 factors. Those factors are:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master, or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

Restatement, 1 Agency 2d, page 506, §229 (Kind of Conduct within Scope of Employment).

Five of these factors would allow a jury to find that Wouts acted within the scope of his employment, when all inferences are drawn in Grady's favor. Contrary to the DOC's assertion otherwise, Wouts's treatment of his other victims is relevant to this analysis because the factors discuss it and because it's proof of motive. Fed. R. Evid. 404(b)(2). These are the factors supporting the finding that Wouts acted within the scope of his employment.

First, factor (b): Wouts assaulted Grady at Wouts's place of work, while on the clock, and with a purpose to benefit his employer. ECF No. 39 at 2–3.

Second, factor (c): the DOC promoted Wouts to sergeant, in part because of his ability to gain compliance with prison rules from inmates. *Id.* at 9.

Third, factor (d): the DOC entrusted Wouts to act alone to gain compliance from inmates. *Id.*

Fourth, factor (f): The DOC had reason to expect that Wouts would assault Grady. Another inmate had complained about Wouts's sexual assaults and, rather than investigate, the DOC punished the inmate and sent him to a maximum-security institution. Plaintiff's Additional Facts, ¶4.

And fifth, factor (h): the DOC entrusted to Wouts the means to assault Grady because it placed Wouts in a position of total power over Grady. *See id*, ¶¶1, 5, & 8–9.

Some factors cannot be determined on this summary judgment record. These are factors (a) and (i). The record does not show how often correctional staff sexually assaulted inmates.

Finally, admittedly, three factors support a finding that Wouts did not act within the scope of his employment, (e), (g), and (j).

Regardless, the answer is not so clear to take it from a jury. The Court should therefore deny the DOC's motion for summary judgment.

### E. The DOC has not established that Wouts has refused to cooperate in this litigation.

Just like the first time the DOC moved for a finding that Wouts has refused to "cooperate in the defense of [this] litigation" they have provided zero facts showing that Wouts has refused to cooperate. Wis. Stat. § 895.46(1)(a). The only facts in this record about Wouts's actions in this litigation are from the letter he sent to this Court, where he shows that he intends to cooperate but has been unable to do so because the DOC has not provided him with counsel to assist him. ECF No. 41. And as the DOC makes clear they do not intend to "represent Wouts in this matter because of the State's position that he was acting outside the scope of employment." ECF No. 38 at 13.

Since this Court found that there were too many unanswered questions on the issue of whether Wouts was refusing to cooperate, the only thing that has changed is Wouts informing this court that he has "every intention to cooperate." ECF No. 41 at 2. The Court properly denied the DOC's motion for judgment on the pleadings on this issue, and because things have only gotten worse for their position since then, it should deny their motion for summary judgment for the same reasons. ECF No. 35.

## V.  CONCLUSION

The summary judgment standard is an exacting one, requiring the party seeking it to establish undisputed facts that lead to only one possible conclusion. The DOC has fallen far short. It has not established that Wouts was acting outside the scope of his employment, nor have they established that he has refused to cooperate in this litigation. The motion for summary judgment should be denied.

Respectfully submitted,

Dated: 20 March 2023,

/s/ R. Rick Resch
R. Rick Resch
  Wisconsin Bar No. 1117722
John H. Bradley
  Wisconsin Bar No. 1053124
James Odell
  Wisconsin Bar No. 1131587
STRANG BRADLEY, LLC
613 Williamson St., Suite 204
Madison, Wisconsin 53703
[608] 535-1550
Rick@StrangBradley.com
John@StrangBradley.com
James@StrangBradley.com

*Attorneys for Plaintiff*